JOHN A. WETHERLA, *Appellee*, v. THE KANSAS CITY
NORTHWESTERN RAILWAY COMPANY et al. (THE
MISSOURI PACIFIC RAILWAY COMPANY, *Appellant*).

No. 18,203.

SYLLABUS BY THE COURT.

PASSENGER—*Alighting at Intermediate Station—Stumbled on
Platform—Contributory Negligence.* A passenger on a rail-
road train who leaves the train at an intermediate station for
a temporary purpose is, in the exercise of ordinary care in
crossing the station platform, bound to look upon the platform
to avoid collision with any object usually or necessarily thereon
which may impede his progress and do him injury. If without
any sufficient reason he neglects so to do and he receives in-
jury by coming in contact with an obstruction he is guilty of
contributory negligence and can not recover damages from
the railroad company for the injury.

Appeal from Wyandotte court of common pleas;
HUGH J. SMITH, judge. Opinion filed November 8,
1913. Reversed.

*W. P. Waggener, J. M. Challiss,* both of Atchison,
and *J. N. Baird,* of Kansas City, for the appellant.

*C. Angevine, J. K. Cubbison,* and *William G. Holt,*
all of Kansas City, for the appellee.

The opinion of the court was delivered by

SMITH, J.: In this case forty-six special questions
were prepared to be submitted to the jury; to thirty-one
of the questions the counsel for the parties, by agree-
ment, appended answers, and fifteen questions were
submitted to be answered by the jury, the foreman af-
fixing his signature to each question so answered. This,
although novel, is regarded as good practice, as it re-
lieves the jury from forming answers to questions of
fact not really in dispute.

The undisputed and agreed facts are that appellee
became a passenger upon appellant's passenger train at

Kansas City, Kan., about 4:30 P. M., November 9, 1909, with a ticket entitling him to ride to Horaniff, a station in Wyandotte county. The train arrived at the intermediate station of Bethel at from 5 to 5:08 P. M., at which place appellee desired to inquire of the station agent about a shipment of potatoes. He spoke to the conductor about this and the conductor said, "All right." The train stopped at Bethel from thirty seconds to one minute. There was a station platform at Bethel extending from the railroad track to the station building, about eighteen feet wide and about one hundred and fifty feet long. A mail sack was unloaded from the mail car of the train about six feet east of the west end of this platform, and lay thereon three or four feet from the train. The train was running in a westerly direction. When appellee stepped off the train he walked toward the agent, who was standing on the platform ten or twelve feet from the train, asked the agent if the shipment of potatoes was there, and was told there was nothing there for him. In attempting to again board the train, appellee stumbled and fell towards the train and on the rail, and his thumb and parts of two fingers were cut and had to be amputated. The appellee was sixty-four years old, six feet and two inches tall, weighed 225 pounds, and was receiving a salary of sixty-five dollars per month.

The jury returned a general verdict in favor of appellee and assessed his damages at $2500. Judgment was rendered for that amount and costs.

The jury, in answer to special questions, found that appellee alighted from the train immediately after it stopped; that darkness was approaching at the time; that appellant was from eight to ten feet from the train when it started to go on, and that he moved rapidly towards it for the purpose of again boarding it; that there was nothing to prevent him from seeing the mail sack if he had looked for it; that the train had moved thirty feet from where it had stopped and was

moving four miles per hour when appellee attempted to
board it; that appellee attempted to board the train at
the front end of the rear passenger car; that appellee
had hold of the hand-rail of the car when he fell, but
stumbling caused him to get an insecure hold; that
appellee stumbled over the mail sack when he started
for the train; that the conductor knew appellee was
attempting to board the train when he fell and knew
this when he heard footsteps behind him; that when ap-
pellee was talking to the station agent the agent was
standing east of the mail sack; that appellee took hold
of the hand-rails of the car in attempting to board the
train immediately south of the west end of the depot.

Two questions were involved in the case: first, Was
the railroad company guilty of negligence which caused
or contributed to the injury to the appellee? second,
Was the appellee guilty of contributory negligence?

The general verdict in favor of appellee is, in effect, a
decision in his favor upon both of these questions, if
such verdict is supported by competent evidence. Each
is a question of fact for the jury and compels an
affirmance of the judgment if, as aforesaid, the evi-
dence is sufficient, and unless the jury has made a
special finding of fact inconsistent with the general
verdict, which special finding is supported by com-
petent evidence.

Numerous objections are made to the instructions
given by the court, and especially to instructions Nos.
7 and 15. Instruction No. 7, although requiring a high
degree of diligence, is practically in accord with the
decisions of this and many other courts as to the duty
of the railroad company in safeguarding its passengers,
and the rule should not be relaxed as to passengers
while on trains.

Instruction No. 7 reads:

"The jury are instructed, as a matter of law, that it
is the duty of a railroad company to use the highest
degree of care and caution consistent with the prac-
tical operation of the road to provide for the safety

and security of the passenger while being transported, and by the highest degree of care, as used in this instruction, is meant that the railroad company, as a common carrier of passengers, is required to do all that human care, vigilance and foresight can reasonably do in view of the character and mode of conveyance adopted, to prevent accidents to passengers, and this rule of law is applicable to all cases where the relation of passenger and carrier exists."

A passenger on a moving train is in the custody of the railroad company and its employees. He is helpless to avert any of the many dangers to which he is exposed. His utmost effort in safeguarding himself is to refrain from any act that increases his peril. On a platform, however, he has full control of his own movements; he is generally free to observe his surroundings, and may generally avoid coming in collision with any object which may cause him injury. We think instruction No. 15 correctly instructed the jury that at the time of the accident appellee was a passenger and entitled to the care of a passenger.

It is claimed in the petition that it was dark at the depot platform at the time of the accident, yet the evidence indicates and the jury found in its special findings Nos. 25 and 28, as follows:

"Q. 25. Was it light at the time plaintiff was injured? A. Approaching darkness.

"Q. 28. What was there to have prevented him from seeing said mail sack if he had looked? A. Nothing if he had looked for it."

It was the duty of the appellee to exercise reasonable care for his own protection as well as it was the duty of the railroad company to protect him from injury. From the two findings of the jury it is evident that if he had looked where he was going he would have seen the mail sack, and it is a fair presumption that if he had seen the mail sack he would not have stumbled over it. He did stumble over it, and it follows as a

reasonable presumption that he did not look, did not see it, and did not exercise reasonable care to avoid injury to himself. On the cross-examination of the appellee as a witness numerous questions were asked as to whether he looked on the platform in going to take the train, to each of which he gave an evasive answer, evidently to avoid saying whether he did or did not see the mail sack. Finally the question was asked him, "You were n't paying any attention to anything that was on the ground?" (Evidently meaning the platform, as he was being interrogated about going on the platform.) He answered, "I did not look to see what was there."

The answer to special question No. 28, by the jury, indicates that appellee did not look and did not see the mail sack on the platform. If he did not, he was guilty of contributory negligence. It was his duty to take all reasonable precautions to avoid any obstructions that might be upon the platform. It is a matter of common knowledge that baggage trucks, mail sacks, and sometimes other obstacles are necessarily for a time upon depot platforms, and it is the duty of the passenger having to pass thereupon to use his senses, especially his sense of sight, to prevent contact therewith and to save himself from injury. The special finding of the jury, in effect, finds the appellee guilty of contributory negligence, and such special finding controls the general verdict, which should have been in favor of the appellant.

The judgment is reversed and the case remanded with instructions to render judgment for the defendant.

JOHNSTON, C. J. (concurring specially) : I concur in the judgment on the ground that no negligence of the railroad company was shown.